## George W. Brimmer *versus* The Proprietors of Long Wharf.

Where there is a mixed possession of land, the legal seisin is according to the title.

The acts of a disseisor are, in respect to the lawful owner, to be limited to an actual ouster and exclusive occupation by such disseisor, and shall not be extended by construction according to his claims under an invalid conveyance.

In the construction of an information alleging that land therein described has escheated to the commonwealth, if the length of lines stated as boundaries does not correspond with the distances of the monuments referred to, the monuments are to govern.

This was an action of trespass *quare clausum fregit*, in which the plaintiff alleged his title to a parcel of land or flats in Boston, bounded south on a line parallel to the solid part of the north side of the *long wharf* and 24 feet distant therefrom, measuring on this line 200 feet ; east on the neck or the T wharf, there measuring 30 feet ; north by a line parallel with the line first mentioned and 30 feet distant therefrom, measuring on this line 200 feet ; west by the cove or harbour of Boston, measuring on this line 30 feet. The defendants pleaded the general issue. The question raised was upon the validity of the plaintiff's title.

To maintain the issue on his part, the plaintiff gave in evidence a deed to his ancestor, Martin Brimmer, executed by Samuel Henshaw and Samuel Barrett, two out of three appointed by an act of the legislature a committee for the county of Suffolk, for the sale of the estates of conspirators and absentees ; which deed was dated May 2, 1782, acknowledged October 13, 1784, and recorded April 13, 1796 ; being a quitclaim, by which the committee conveyed to M. Brimmer all that " parcel of flats and wharf by Minot's T, so called, late the property of Eliakim Hutchinson, an absentee, containing in length from 30 to 60 feet, more or less, and bounded north on said T, west on the flats towards the town 200 feet, south on the wharf and flats of the late William Davis from 30 to 60 feet more or less, and east, down to the channel, or however otherwise bounded ; and all the right, title, &c., of the commonwealth in the premises with the appurtenances." The plaintiff also offered in evidence a

judgment of the Court of Common Pleas for the county of
Suffolk, at October term 1781, by which the estate of Eliakim
Hutchinson was confiscated.   In the information filed by the
attorney-general, and the judgment thereon, the estate is
described as follows : — "Thirty feet of flats in length,
bounded as follows, viz. northerly on the wharf and flats
called Minot's T, southerly on flats belonging to the pro-
prietors of the long wharf, so called, easterly on flats leading
down to the channel, and westerly on flats towards the town
or cove, — containing in this direction 200 feet, — and its
appurtenances."   These flats were adjudged to escheat to the
commonwealth.

The plaintiff then contended that the deed from the com-
mittee being in the alternative of 30 or 60 feet, the grantee
had a right to consider it as a deed for 60 feet, and to enter
accordingly ; that such an entry would give him a seisin *de
facto,* and after a certain length of time, a good title.   He
also insisted, that he had a right to hold to the monuments, as
controlling the courses and distances, and offered evidence
tending to prove, that the grantee did in fact enter upon the
same as for 60 feet, claiming to that extent under the deed.
Upon this point *Wilde* J. ruled, that the entry and claim of
the grantee under such deed would enure to confer a seisin
*de facto* only so far as the deed conveyed a good title for
30 or 60 feet, as the case might be ; that as the committee
conveyed 30 or 60 feet, being all the commonwealth's right,
the grantee's entry and seisin must be deemed to be co-
extensive with the right thus conveyed ; and that by legal
construction, the judgment of confiscation operated for only
30 feet of flats bounded on the T.

The plaintiff then offered evidence tending to prove that
Eliakim Hutchinson, the absentee, was seised of a parcel of
flats, amounting to 60 feet and next adjoining the T, and
produced divers ancient documents relative to what was called
the *barricado,* to prove such seisin.   The facts in relation to
this are sufficiently detailed hereafter in the opinion of the
Court.   After proceeding in the evidence, the judge ultimately
ruled, that it was immaterial whether under this ancient title
the absentee was or was not seised of the premises, because

the commonwealth acquired no title except to such portion of his estate as was embraced by the judgment of confiscation, that in point of law, if there was a larger portion to which the commonwealth might have laid claim under the absentee act, yet if not included in the judgment, no title passed to the commonwealth, and none by the deed of the committee ; that by the treaty of peace of 1782 no further confiscation could take place, and therefore, if the absentee had good title to such further portion of flats, it remained to his heirs. To these several opinions the plaintiff excepted.

The defendants then offered to give in evidence their title to the place in controversy ; the principal facts in relation to which are stated in the opinion of the Court. Among the documents produced was a deed, dated April 10, 1712, from John Ruck to Oliver Noyes and his associates, of part of the barricado, being 30 feet, " somewhat to the northward of the southerly open." The defendants also offered to read in evidence a deed purporting to be a division deed between Noyes and his associates, builders of the long wharf, dated in 1715 and recorded in 1717, reciting their grants from the town and from proprietors of parts of the barricado, and declaring the extent of their claim to the north and south, being in conformity to the present claim of the defendants (their successors), and declaring the manner in which they should hold in future, viz. certain store lots, set off, to be held in severalty under certain regulations therein mentioned, and the remainder to be held by them as tenants in common. The reading of this deed was objected to by the plaintiff, but was admitted by the judge. The plaintiff then objected that the defendants had shown no title in Ruck, to the premises in controversy, at the time when he made his deed ; and also that the deed was void for uncertainty. Upon this point the jury were instructed, that if the defendants, or Noyes and his associates, had entered on the 30 feet of land in dispute, claiming it under Ruck, and had held it ever since, it would be a sufficient title for the defendants in this case, although there was no title in Ruck ; and that although such claim and possession might not in law amount to a disseisin of the true

proprietor, yet it was sufficient against every one except the
proprietor or those claiming by a prior title.

The plaintiff offered evidence to prove, that after the deed
from the committee to Martin Brimmer, he, and those claim-
ing under him, have exercised divers acts of ownership in
the premises, by laying vessels thereon, by claiming and re-
ceiving dockage and wharfage from vessels thereon, and by
repairing the neck of the T adjoining the premises on one
side, at his own expense. He also offered evidence to prove
possession for more than 30 years, of the wharf called the
neck of the T, and contended that the *locus in quo* was or
might be held as appurtenant to that wharf. The defendants
also gave in evidence, that, during the same period, they had
exercised acts of ownership in the premises in controversy.
This evidence, having been extended to great length on both
sides, was stopped by advice of the judge, and the jury were
instructed, in point of law, that if either party could show a
clear adverse and exclusive possession, it would be material
to this issue. But they were further instructed, that if from
the nature of the property, being flats, not built upon or en
closed, neither party could have an exclusive and adverse
possession thereof, or if, in point of fact, the parties had
had a mixed possession and exercised acts of ownership in-
discriminately, then there was no such exclusive possession
proved by either party as would of itself give a title, and
consequently the issue must be determined according to the
legal title.

Under the foregoing directions a verdict was found for the
defendants, subject to the opinion of the whole Court upon
the several points above stated.

The cause was argued by *Hubbard* and *Sohier*, for the
plaintiff, and by *Prescott* and *Shaw*, for the defendants.

The opinion of the Court * was drawn up by

PUTNAM J. We are all agreed respecting the general
principles of law applicable to this action.

The instruction given by the judge who tried the cause, —
that if, in point of fact, the parties had had a mixed posses-

Brimmer
*v.*
Proprietors
of Long
Wharf.

*March* 14*th*

*Nov. term*
1827.

---

* The *Chief Justice* did not sit in this cause.

Brimmer
v.
Proprietors
of Long
Wharf.

sion, and exercised acts of ownership indiscriminately, then there was no such exclusive possession proved by either party as would of itself give a title, and that consequently the issue must be determined according to the legal title,[1] — is correct.

It is also well settled, that where there is evidence of a lawful title, accompanied with seisin and possession, it is presumed to continue in the lawful owner, and his heirs and assigns, until an actual ouster and disseisin shall be proved. Thus the owner who is seised of upland bounded by the salt water, is supposed to have the seisin of the flats to the channel, not exceeding one hundred rods.[2]  So the owner of a wharf who is seised of the wharf, is supposed to have the seisin of the flats appurtenant to the wharf, until severed by grant, disseisin, or in some other way, from the upland or wharf.

And it is also to be observed, that acts of disseisors are, in respect to the lawful owner or true proprietor, to be limited to an actual ouster and exclusive occupation of such disseisors, and shall not be extended by construction according to their claims under invalid deeds or other conveyancing.[3]

There is another rule of great importance in the case at bar, which is equally indisputable, viz. that where a claim is made under a deed or other conveyance or assurance, and the description of the distances or length of the lines differs from the distances of the monuments referred to, the monuments shall control the description of the distances.[4]

The case finds that both parties claimed under what was

---

[1] See 4 Kent's Comm. (3d ed.) 482; *Rust* v. *Boston Mill Dam Corp.* 6 Pick. 171 ; *Kinsell* v. *Daggett,* 2 Fairfield, 309.

[2] See *Ingraham* v. *Wilkinson,* 4 Pick. 271.

[3] A grant that is void is nevertheless evidence of the nature and extent of the claim of a party making an entry under it.  *Milton* v. *First Congrega tional Parish in Milton,* 10 Pick. 447.  ·See *Kennebec Purchase* v. *Laboree,* 2 Greenl. 273; *Little* v. *Megguire,* 2 Greenl. 176; *Farrar* v. *Eastman,* 1 Fair field, 195.

[4] See 4 Kent's Comm. (3d ed.) 466; *Pernam* v. *Weed,* 6 Mass. R. 133 *Howe* v. *Bass,* 2 Mass. R. (Rand's ed.) 384, n. *a,* and cases there collected *M' Coy* v. *Galloway,* 3 Ohio R. 284; *Alshire* v. *Hulse,* 5 Ohio R. 534.

anciently called the barricado or outwharves. That title is connected with an interesting historical fact relating to the colony of Massachusetts. War had been proclaimed at Boston against the Dutch in 1672. In March 1673 the castle, which was built of timber, was burnt ; and in August of that year, " advice came to Boston, that the Dutch, after taking several ships at Virginia, had possessed themselves of New York, and that the Dutch force were bound further northward ; and this intelligence caused great alarm in the colony." It appears by the records, that in September 1673, the barricado or sea wall before the town was projected, not only to defend the town against the approach of fire ships, but to be raised fourteen or fifteen feet high, and twenty feet wide on the top, to make a convenient breastwork " to play guns on," as the vote of the resolute inhabitants expressed it. As a compensation to the builders, the town granted to them the property in the wall or wharf which they should build, and 200 feet inwards, towards the town, and so, on the other side, of the same width, to the channel in the harbour. In an act of the colonial government of May 1681 it is said, that this sea wall had been built and almost finished at the great loss, pains, and hazard of the undertakers, for the safety of the town and his majesty's colony.

136

The land in controversy is between the middle and the south gaps, which are agreed to be 350 feet apart. The plaintiff claims 180 feet from the middle gap. The defendants admit that he has 150, but contend that the 30 feet next southerly of the 150 belong to them.

It is well ascertained, that the *locus in quo* is part of the 60 feet of land originally granted to Eliakim Hutchinson, who was an original subscriber to build 60 feet of the sea wall. And its position is well fixed by reference to the deeds and papers which are in the case. It will appear by them, that one Woodmancy undertook to build 120 feet. His heirs describe his lot in 1711, as bounded by the middle gap on the northerly side, and upon the wharf and flats of Eliakim Hutchinson on the southerly side. There is no dispute as to the position of the middle gap, nor as to the length of Woodmancy's sea wall, nor as to the length of Eliakim

Hutchinson's sea wall, nor of its being next to the southward of Woodmancy's wall. It is satisfactorily ascertained, that the *locus in quo* is the southerly half of the flats ground inwards and towards the town, that belonged to Eliakim Hutchinson as the builder of 60 feet of the sea wall. He was the true proprietor. He had the actual seisin and exclusive possession of the sea wall or wharf itself, and by force of the grant he had the legal seisin of the flats on each side. It is proved or admitted, that he and those claiming under him have continued to be actually seised and exclusively possessed of the 60 feet of wharf, built by him, now constituting the neck of the T. The title of Eliakim Hutchinson the builder is regularly traced to Eliakim Hutchinson the absentee, whose estate was confiscated in 1781. In virtue of the information, proceedings, and judgment against him, the commonwealth became seised of all the estate of the absentee, between Minot's T on the north, and the land belonging to the proprietors of the long wharf on the south, notwithstanding the distance between those monuments exceeded 30 feet. Such would have been the construction of a deed from the absentee, and the same rule applies to the information and judgment.

The plaintiff claims all the confiscated estate in virtue of the deed of a majority of a committee appointed to sell it on the part of the commonwealth. If it should be eventually decided that nothing passed by the deed of a majority of the committee, and that both parties are strangers to the original title granted to Hutchinson the builder, then the entry and claim under Ruck's deed or otherwise, and the evidence arising from the division deed of the proprietors, as to the extent of the claim of the proprietors, would give them a better title than the claim and mixed possession of the plaintiff long after those transactions. As between these parties the defendants would upon comparison have the better title.

But it has been contended for the plaintiff, that the defendants, being strangers, cannot controvert the validity of that deed on the ground that it was not executed by all of the committee. And the trial proceeded upon the assumption, that all the estate of the commonwealth did pass by the

deed of the majority of the committee to the ancestor of the plaintiff. If that was not the effect of it, the estate and title of Hutchinson remains in the commonwealth, and it could confirm the title according to the intent of the original parties. The effect of that deed is not intended now to be determined, but it is now considered, as it was at the trial, as passing all the estate of Hutchinson, the absentee, to the ancestor of the plaintiff; subject to a revision as to its validity, if it should be hereafter thought proper to question it.[*][1]

The title of the proprietors of the long wharf originated about forty years after the barricado title, and was expressed to be made subject to all the rights acquired by the accomplishment of that meritorious undertaking. The long wharf intersected the barricado nearly at right angles.

The proprietors of the long wharf now claim 30 feet of the flats originally granted to Eliakim Hutchinson, the builder of 60 feet of the barricado. And they produce a deed from Ruck to Noyes, of April 10, 1712, as covering the disputed ground. It is very uncertain where the land described in that deed is to be located. It is " *somewhat to the northward of the southerly open,*" or gap. But if it were certain, and if it contained a part of the flats granted originally to Eliakim

Brimmer
*v.*
Proprietors of Long Wharf.

138

---

[*] The question of the validity of this deed came before the Court at March term 1828, being the only point reserved upon a new trial of the cause. But at the opening of the argument, the plaintiff's counsel produced an authenticated copy of a resolve of the legislature, passed on the 19th of June, 1782, authorizing a major part of the committee to give deeds; whereupon judgment was entered upon the verdict (which was for the plaintiff) by consent. The resolve was as follows : —

" Whereas, by reason of sickness and other necessary impediments, it is frequently impracticable, that more than two of the committee appointed in the counties of this commonwealth respectively, for the sale of estates of conspirators and absentees lying within the same, should be together, for the purpose of transacting the business assigned them, — *Resolved,* that any two of either of the said committees be a *quorum* for transacting business; and all deeds and releases, which may have been already executed by any two of either of the said committees, or which may be by them executed in other respects conformable to the laws and the resolves, made and passed for the regulation of the said committees, be, and they hereby are considered and declared valid to all intents and purposes, as though the same had been executed by the whole number appointed as a committee in the respective counties aforesaid."

[1] See *Moffit* v. *Jaquins,* 2 Pick. (2d ed.) 332, n. 1.

Hutchinson the builder, there is no evidence of any grant from the latter, or from any person claiming under him, to Ruck. So that Ruck and his assigns must be considered as disseisors in respect to the estate of Eliakim Hutchinson the builder, who was the true proprietor ; and they must therefore be limited to their actual and exclusive possession, and cannot extend their claim by construction, upon the principles before stated, against the true proprietor, but only against strangers. The claiming of the flats under that deed, and the occasional passing over the same, and mooring vessels on them, would not in law be considered as such an ouster and such an exclusive possession against the true proprietor, as to amount to a disseisin of him, while he actually held the barricado itself, and claimed and occupied the flats originally granted with it, as occasion required.   If Ruck or his assigns did take actual and exclusive possession, and oust Eliakim Hutchinson the builder, or his assigns, prior to the proceedings against the absentee, in such way as that the absentee was not seised of the whole of the original grant to Eliakim Hutchinson the builder, it would be clear, that that part, of which the absentee was not seised, would not pass by the judgment and proceedings against him ; and the bounds of the confiscated estate would be limited by the fixed boundaries of the proprietors of the long wharf, so obtained by disseisin.

The extent of the plaintiff's estate must be determined by a reference to the information and the judgment of confiscation.   The flats are there described as being 30 feet wide, and as being bounded *northerly on the wharf and flats called Minot's T, and southerly on flats belonging to the proprietors of the long wharf.*   If no monuments can be ascertained, the length of line must govern and determine the width of the demanded premises and the southern boundary of them.   But if the northern line of the proprietors of long wharf can be ascertained, that must prevail, although it give a width of 60 instead of 30 feet.   If, however, the proprietors of long wharf can show title to one line and possession up to another still further north, the words in the description might well be construed to refer to the land in the possession of the proprietors of long wharf.   But this possession must be such as

will furnish a distinct boundary, and of course must be open and exclusive.

A new trial is granted, to give an opportunity to ascertain the northern boundary of the land belonging to the proprietors of long wharf : which may be proved by their title deeds, &c., or by their possession. If they cannot show an exclusive possession, they must rest on their title. And if by either their northern boundary can be ascertained, that must be the southern boundary of the confiscated estate ; and to that must the plaintiff's estate extend and be limited.